**Leonard JEFFRIES, Plaintiff,**

v.

**Bernard HARLESTON,
et al., Defendants.**

**No. 92 Civ. 4180 (KC).**

United States District Court,
S.D. New York.

May 11, 1993.

Joseph Fleming, New York City, for plaintiff.

Clement Colucci & Katherine Whipple, Corp. Counsel, New York City, for defendants.

## ORDER

CONBOY, District Judge:

This trial commenced on April 22, 1993, and the jury submitted its initial verdict on May 10, 1993. There were five questions on the First Verdict Form, which the jury answered as follows:

1. Has the plaintiff proven by a preponderance of the evidence that Leonard Jeffries' July 20, 1991 speech in Albany was a substantial or motivating factor in the denial of plaintiff's three-year term as Chairman of the Black Studies Department? "Yes."

2. Have the defendants shown by a preponderance of the evidence that Leonard Jeffries would have been denied a full three-year term as Chairman of the Black Studies Department even had Jeffries not made his July 20, 1991 speech? "No."

3. Have the defendants proven by a preponderance of the evidence that Leonard Jeffries' July 20, 1991 speech hampered the effective and efficient operation of the Black Studies Department, the College, or the University? "No."

4. If the answer to question # 3 was "no," have the defendants proven by a preponderance of the evidence that the defendants were motivated in their actions by a reason-able expectation that the plaintiff's July 20, 1991 speech would cause the disruption of the effective and efficient operation of the Black Studies Department, the College, or the University? "Yes."

5. Has the plaintiff proven by a preponderance of the evidence that the defendants deprived him of property without due process of law? "Yes."

To begin, the Court notes that the jury found that the defendants violated the plaintiff's rights under the fourteenth amendment, in that they deprived the plaintiff of property without due process of law.

Having received the determinations of the jury with respect to the factual issues underlying the first amendment allegations, the Court must now balance the interests of the plaintiff Leonard Jeffries "in commenting upon matters of public concern," against the interests of his employer, City University, "in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Ed. of Tp. H.S. Dist. 205, Ill.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968).

In performing this balancing test, the Court must determine the degree to which Professor Jeffries' July 20, 1991 speech involved matters of public concern. In making this determination, the Court looks to the "content, form, and context of a given statement as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). Professor Jeffries made his speech at the Empire State Black Arts and Cultural Festival in Albany, New York, in a function that was wholly unconnected with City University. The speech was made in response to and as part of an ongoing debate concerning the importance of teaching different perspectives in the classrooms of this country. The subject of the debate and the content of the speech concerned the reform of the educational curriculum to reflect the multicultural values and experiences of different minorities in the United States. In fact, Professor Jeffries had been retained by the State of New York to advise a task force appointed by New York State Education Commissioner,

Thomas Sobol, to study the status of the curriculum in the state's public schools and the treatment of people of color in that curriculum (see Plaintiff's "Affidavit in Support of Plaintiff's Motion for Summary Judgment," para. 7). Professor Jeffries was given the task of researching the impact of the public school curriculum on African Americans. Following publication of the task force's findings, a storm of controversy broke over the participants, who then proceeded to attack each other. The ensuing debate absorbed the energies of the press and commentators on the American scene, across the nation. Indeed, in his speech, Professor Jeffries responds to criticisms that had been leveled at him and his ideas by others in both academic and political life.

Reviewing the record with respect to Professor Jeffries' July 20, 1991 speech, the Court finds that the speech substantially involved matters of public concern and "should be accorded significant weight in the *Pickering* balance." *Piesco v. City of New York, Dept. of Personnel*, 933 F.2d 1149, 1157 (2d Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991). The speech was part of a debate that has broad and extremely significant implications for American society. Possible reform of the educational curriculum, and the introduction of multicultural perspectives in the classroom, to whatever degree thought prudent, represent a critical dialogue that reaches the deepest political and social values of the United States. While it is quite understandable that some may consider certain statements in Professor Jeffries' speech to be offensive, these statements do not dilute the high degree of public concern that is at the core of the speech.

On the other side of the scale, the Court must weigh the right of the University to function effectively and efficiently. In weighing this right, the Court defers to the jury's factual findings. The jury found that Professor Jeffries' July 20, 1991 speech did not hamper the effective and efficient operation of the Black Studies Department, the College, or the University. However, the jury also found that the defendants were motivated in their actions by a reasonable expectation that the plaintiff's speech would cause the disruption of the effective and efficient operation of the Black Studies Department, the College, or the University.[1]

The question facing the Court is whether the defendants, in order to outweigh the free speech rights of the plaintiff, must show actual hampering of the effective and efficient operation of the Black Studies Department, the College, or the University, or whether the "reasonable expectation" that the plaintiff's speech would cause disruption is enough to overcome the plaintiff's first amendment rights. We recognize that in *Connick* the Supreme Court stated that it did "not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Connick*, 461 U.S. at 152, 103 S.Ct. at 1692. However, the Supreme Court cautioned "that a stronger showing may be necessary if the employee's speech more substantially involved matters of public concern." *Id.*

Many courts since *Connick* have held that where a public employee's speech substantially involves matters of public concern, the defendants must show *actual* hampering of the effective and efficient operation of the governmental services in order to outweigh the employee's first amendment rights. A showing that the defendants were motivated in their actions by a "reasonable expectation" that the employee's speech would cause the disruption of the effective and efficient operation of the government office is insufficient. *See, e.g., Piesco*, 933 F.2d at 1159–60; *Melton v. City of Oklahoma City*, 879 F.2d 706, 715–16 (10th Cir.1989); *Roth v. Veteran's Admin. of Government of United States*, 856 F.2d 1401, 1407 (9th Cir.1988); *Matherne v. Wil-*

---

1. We observe that at least one Circuit court has held that in performing the balancing test required by *Pickering* a "court must defer to [the jury's] factual findings, unless the[ ] [findings] are totally unsupported by the record." *Lewis v. Harrison School District No. 1*, 805 F.2d 310, 315 (8th Cir.1986), *cert. denied*, 482 U.S. 905, 107 S.Ct. 2481, 96 L.Ed.2d 374 (1987). However, the authority is unclear in this Circuit as to the obligation of trial courts to make factual determinations when balancing the *Pickering* factors. Accordingly, we have made an independent review of the evidence in this case, and we agree with the jury's factual findings.

744

son, 851 F.2d 752, 761 n. 53 (5th Cir.1988); *Zamboni v. Stamler*, 847 F.2d 73, 78 (3rd Cir.), *cert. denied*, 488 U.S. 899, 109 S.Ct. 245, 102 L.Ed.2d 233 (1988).

Because the jury found no actual hampering and because we have found that the plaintiff's speech substantially involved matters of public concern, we hold that the plaintiff's interest in making his speech outweighs the University's interest in the effective and efficient operation of its services. Accordingly, the Court finds that the University's denial to Professor Jeffries of a full three-year term as Chairman of the Black Studies Department constitutes a violation of plaintiff's first amendment rights.

We will, therefore, submit the first amendment claim with the fourteenth amendment claim to the jury for further deliberations on the questions of individual liability and punitive damages.

SO ORDERED.